Case Britannia-U Nigeria, Limited v. Chevron USA, Mr. Humphrey. Thank you, Your Honor. May it please the Court and the Council. My name is Brian Humphrey. I represent the appellant, Britannia-U. This case broadly covers two issues, whether the case should have been dismissed in favor of arbitration and whether this case should be remanded to state courts. I'll just start with the first one. I think it's important to step back from the weeds in this case and look at exactly what they're trying to enforce here, what Chevron's trying to enforce. It's an arbitration provision in a confidentiality agreement that has zero to do with this case, nothing. The terms of this contract do not have to be referred to in any way in the case. Not only is it not connected with the case, it's not relevant to any claim that Britannia-U has made in this case. It won't ever be used as exhibit in the case. You could probably ball it up and throw it away and it wouldn't make any difference whatsoever in the case. That is the contract that has the arbitration provision that they're trying to enforce over Britannia-U's tort claims, which is all they have pledged in this case. But the question is who decides the question of arbitrability. That is correct, Your Honor. So in that question, it comes under a very different analysis than the question of what is arbitrable. As the Supreme Court and this court have both held, the presumptions are reversed. The presumption is against having an arbitrator decide that idea. But there is a delegation clause here. That's correct, Your Honor, but the delegation clause is not a broad one. This was under unit trial rules? It's under – exactly, Your Honor. Both the delegation clause itself and uncontrolled rules only cover the existence and validity of the contract. Neither one of them say anything about delegating the interpretation, the scope of the agreement. The interpretation of its effect is applicability. Those words appear nowhere in uncontrolled as far as the delegation provision of that, and they appear nowhere in the delegation provision of this contract. Well, you know, you have, right or wrongly, the jurisprudence seems to be that if you incorporate in your agreement a provision that for arbitration under the rules of the American Arbitration Association, that that in and of itself tilts this toward the arbitrability being passed to the arbitrator. That is with the AAA rules, Your Honor. Yes, so my question is why isn't unit trial – how is that different in that regard? Because the language of the rules is different. The language in the AAA rules expressly includes a delegation of the scope and applicability and interpretation of the contract where uncontrolled rules do not. And all of the cases cited by the appellees for this issue all deal with AAA rules. There was one case aside. I was unable to find a reported case dealing with the incorporation of uncontrolled rules, but I found an unreported one, which is the Republican-Iraq v. BMP Paribas case, and there the Second Circuit held that that was not clear and unmistakable evidence that the issue in that case of whether the agreement was enforceable by a third party was subject to arbitration. Where in your brief do you contest the district court's finding that this is properly delegated to the arbitrator? In my original brief, it is not contained in the original brief. I think appellees correctly pointed that out. I addressed it in my reply brief, and that was an inadvertent omission on my part, and I don't mean to offer any excuse for that. It's just the fact that it was not my focus when I was briefing the case originally. There are a lot of issues in the case, and it just didn't occur to me. You know, we had asked a question about jurisdiction. If, and I know you disagree that the convention applies, but if the convention applies, do you agree with counsel opposite that argued that it isn't necessary that you show the citizenship per se of Britannia U because it involves, it has a significant foreign interaction because the oil fields or whatever they are are in Nigeria? I think that's correct, Your Honor. I would have to concede that, yes, this case was properly removable but should be remanded if this case is not arbitrable under this court's jurisprudence. Okay, so it's a little bit circular in the convention application. I realize that, but you had raised this issue of remand to address the citizenship of Britannia U, but that was on the diversity ground. That's correct, Your Honor. I think it applies to the other ground, but here we have two different reasons why the convention might apply. Dealing with the delegation clause, Your Honor, the delegation clause here, I mean, simply one thing to remind the court of and to just point out is we've not contested that this arbitration provision is valid or exists. Our only argument is that our claims are outside the scope of it. Why shouldn't we find that your failure to brief it in the opening brief waives this argument? I think the court has discretion to find that, and all I can do is fall on my sword and say that was my error in doing so as counsel and that my client shouldn't be blamed for that. Also that the appellees have fully briefed the issue. They're not prejudiced by this. To be honest, the issue was not raised in the trial court until very late in the process, in fact, either in a supplemental brief or reply brief, and that is why it didn't occur to me at the time. It wasn't contained within their original motion to dismiss. So it wasn't a focus until late in the case. It just escaped my attention. But regardless of that, I think the issue is very clear cut. It's whether the language of uncontrolled rules and of this particular clause clearly and unmistakably evidences intent to submit to the arbitrator the issue of interpretation of this arbitration provision, and I don't think it does. If it's read here, 9.4. I thought three circuits had said it did. That this particular uncontrolled language has? That these rules are delegate arbitrability. Well, arbitrability of the validity of the contract, I've certainly seen that before, Your Honor, where if there's an argument as to whether, for example, this agreement was induced by fraud or this agreement was supported by consideration or if it was signed at all in the first place, I think those issues would be delegated to the arbitrator. But the issue of how to interpret this contract and whether it applies to the claims that we've raised in this case I don't think are clearly and unmistakably submitted to the arbitrator under either the rules or the language of this very contract. Isn't that the quintessential delegation of arbitrability to the arbitrator to decide if this dispute is arbitrable? Well, the issue of delegation, well, for one thing, the courts, this court and the Supreme Court, has held that there's a very different analysis in determining that issue. The presumption is against having the arbitrator decide these issues. That can only be rebutted with clear and unmistakable evidence of intent. Here, there's clear and unmistakable evidence that the parties intended to have the arbitrator resolve issues of the existence of the entire agreement or the existence of the arbitration agreement or the validity of the agreement, but not the interpretation of the agreement or its scope. I don't think the courts... Well, that's the problem, interpretation of the agreement or its scope. I mean, that is the quintessential arbitrability. The arbitrator could very well conclude exactly what you said. Look, this agreement, we can throw it in the trash and you've still got your lawsuit, and therefore it isn't arbitrable, and send it back. I mean, that could happen. People always fight arbitration assuming they're going to lose. But you could actually win on this point. The question is just who gets to decide, the district court or the arbitrator. I agree with the court. The arbitrator could actually do that, but the parties did not agree to have the arbitrator do that under this contract. The parties only agreed to have it because there are two types of arbitrability agreements. Well, there's more than two, but there's one where we're arguing that the contract doesn't exist or is invalid, and there's another where we're arguing the construction of the contract, which is what we're arguing here, and that's not contained within this delegation clause. I don't think under the presumption against delegation that the case law shows that we can expand the scope of this delegation clause to include a matter that's not contained in its language or in the language of the rules that it incorporates. I mean, it says the arbitrator has the power to rule on objections concerning jurisdiction, meaning the jurisdiction of the arbitrator to hear the arbitration, including the existence or validity, and the existence or validity of the arbitration provision of the agreement. But it doesn't say and limit it to. It's just including, so that's an example of what's included, but it seems broader than that. Why wouldn't it encompass the question of whether this contract matters to the dispute? I think, Your Honor, it could be construed in that way, but not clearly and unmistakably so, as it would have to be in order to constitute a valid delegation of this issue. I don't think it's clear and unmistakable that the parties agreed to delegate the issue of interpretation or the scope of this arbitration provision to an arbitrator when all they're mentioning is jurisdiction, validity, and existence. How do you distinguish Petrofrac? The Petrofrac case deals. That's AAA rules. They're arbitration rules. I mean, it's AAA rules, but they're similar to the Unicantrol, so I'm asking how you distinguish them substantively. Right. They're similar but not identical. The AAA rules specifically mention interpretation and scope and applicability. Then what do you do with Oracle, which says Unitrol, same thing? I think Oracle is incorrect on that issue. Sir? I think Oracle is incorrect on that issue. Okay. And, frankly, I think other courts have found it differently, such as the Second Circuit in the Iraq v. BNP case. Well, you've got, what, three circuits that are against you on that point. I would not disagree with that, Your Honor. I think we just have to look at the specific. Petrofrac was looking at the first clause, which is the same as the other first clause, the arbitration of the power to rule on his or her own jurisdiction. It has a broader including clause, but the predicate phrase still has to meet. The predicate phrase is what matters because an including can only provide examples of the predicate phrase. And the predicate phrase is the same. The predicate phrase being power to rule on his or her own jurisdiction. That is correct, Your Honor. But I think when you have a list of things afterwards, after the predicate phrase, I think that can limit the predicate phrase. And I think here, again, we have a clear and unmistakable standard, not a possibly including standard. It has a clearly and unmistakably evidence and intent to delegate this particular issue, not just any issue that might be delegated. When was this contract signed? This contract was signed, I believe, in 2013, Your Honor. By which time at least one case had found that to be the construction of this. I think that would be correct. Of course, the parties chose England and Wales law for the interpretation of this entire contract to begin with. They didn't even choose American law on it. That's a whole other issue. I think it's related to this, though. I think it's related to this. I frankly don't have a whole lot of authority on this particular delegation issue out of England, so I can't show that English law is any different than American law on this. So I do think it would potentially govern. So with the delegation clause, I think, unless the Court has any other questions on that, I think the gist of it is simply that there has to be a clear and unmistakable delegation of this issue, and I just don't think it appears in this language. Moving beyond that, the argument concerns here whether the first off, whether England and Wales law applies to the interpretation of this provision. I'd point out that all the Fifth Circuit cases cited by the appellees dealing with whether a general choice of law clause governs the interpretation of the agreement, and here I'm talking about Cooper v. West End, BNSF Railway v. Ostrom, and Action Industries, all of those deal not with the interpretation of the provision but what procedural law to apply. All of them dealt with the confirmation or vacator of an arbitration award. None of them deal with this particular issue of arbitrability. But this Court held in Prescott, as it did in Ford, that a general choice of law clause are one that the parties have the ability and the power to choose, just as the Supreme Court said in Volt, to apply whatever law they want to to the interpretation of the arbitration clause. And in Prescott, as in Volt— What did the district court do, if any, with regard to arbitrability? What did the district court do here? What did the district court do here? This district court delegated the issue to the arbitrator, Your Honor, in this case, with regard to arbitrability. I think that there was no opinion issued with this order. Instead, the court ordered that the case need to be sent to arbitration and that the arbitrator would have the power to determine his own jurisdiction. And we think the court was in error. Other than the court said he couldn't reach the issue. That's correct. The court could not reach the issue and that the case had to be delegated. So that would be one thing that the court could do here, is remand the case for termination of that issue. However, I think it's a question of law, and it was something that was argued by both parties, and I think this court could reverse on the basis of this case outside the scope of the arbitration agreement. The arbitration agreement itself is governed by English law, and English law doesn't have quite the same presumption, or at least it doesn't appear to have as strong of a presumption in favor of arbitrability as American law does. The leading case is a Fiona case, a Fiona Trust case that we discussed and both parties discussed, that deals with a presumption in favor of one-stop arbitration. But I don't think that means, and the cases subsequent to that have been cited, don't mean that all unrelated cases between a party would be subject to arbitration. Merely that issues of the existence or validity of a contract, for example, would be submitted to an arbitrator. The same way it would be here, for example, if I say that a contract is induced by fraud, normally that's something for the arbitrator to consider. That was the case of Fiona Trust, and Fiona Trust itself was whether the contract itself was valid because it had been induced by bribery. But the cases that have come later, such as the Ryanair case we cited, show that tort claims that don't require reference to the contract are not within the scope of even a broad arbitration provision, like this one, under English law. And I think that's the case under American law as well, that if we have a tort claim that doesn't require any reference to the contract, would exist without the contract's own existence, then the tort claim is not within the scope of the arbitration provision unless it's explicitly said so, unless it explicitly is made to be so. Your initial time has expired, Mr. Humphrey. You've saved time for rebuttal. Thank you, Your Honor. May it please the Court. This case begins and ends with the delegation clause, and I'll focus principally on that, although, of course, I'll answer any questions the Court has about any of the other issues. In its 2016 cases, Kubala and Reyna, this Court held, quote, if there is a delegation clause, the motion to compel arbitration should be granted in almost all cases. Judge Rosenthal faithfully followed that precedent here and dismissed the case, and this Court should affirm. Now, Wasn't this a delegation clause? I think it's undisputably a delegation clause. The only question is whether it's a delegation clause that covers the scope and arbitrability questions that are at the center of this case. And Judge Haynes correctly points out that the first clause in the delegation clause, the arbitrator shall have authority to rule on objections concerning jurisdiction, is clear and unmistakable delegation to the arbitrator to determine issues of the scope of the agreement. Indeed, as Judge Haynes correctly pointed out, that is the quintessential question that is delegated to the arbitrator. The delegation clause then goes on and uses an including phrase, and it says including questions of the validity or existence of the agreement. Those are more extreme questions. Those are often questions that courts deal with. But the delegation clause here used a belt and suspenders approach to be clear that even those extreme cases would be delegated to the arbitrator. Let me ask you a hypothetical. Let's say I go to ABC Bank and open a checking account and I sign an agreement identical to this in terms of the arbitration clause, and then a year or two later I close my checking account, and that's the end of that. And then six months later I'm at ABC Bank because my husband has an account there, let's say, and I slip and fall. Am I required to go to arbitration to decide if that slip and fall is arbitrable? That sounds a lot like this court's decision in the regent's case. And this court held that there is a very, very narrow exception to the delegation clause. And because that sounds a lot like it, I would say that you would have a strong argument to avoid arbitration. What's different about his case? It's very different. And the court said so long as there are plausible arguments on either side of the arbitrability question, then that question goes to the arbitrator. Here what you have is pertaining a you agreeing to a confidentiality agreement that was a prerequisite to participating in the bidding process and then accepting the bid procedures that were the prerequisite to moving to the next stage of the bidding process. Then they bring a lawsuit claiming that the bidding process was unfair. That lawsuit, while it's framed as tort claims, is interrelated with and arises out of the same bidding process relationship that's governed by those two documents. You're saying it's not wholly unrelated like my hypo in ABC Bank. Correct. I just happen to be at the bank for some other reason, and this checking account thing is long since gone. That's correct, and it's not only wholly unrelated. To decide this case, whichever tribunal decides this case is going to have to look at clauses in the confidentiality agreement and the bid procedures, which you can see excerpted on page 7 of our brief, where they provide, probably most on point, Chevron reserve the unilateral right at any time in its sole discretion to negotiate with one or more parties and to enter into an agreement relating to the assignment of the interest with one or all parties. That's directly on point for the claims that Britannia is raising here. They say Chevron should have accepted our bid because it was the highest bid. Chevron unfairly negotiated with other parties and quit negotiating with us. So you say it has a sufficient facial connection that we don't have to resort to some extreme thing of a completely disconnected thing and decide that case because that's not the case. That's right. I think the court in the Regents' case did hold there is a very narrow exception for claims that are completely unrelated and there's no plausible argument that the case is arbitrable, but in later cases the court made very clear that's an extremely narrow exception. In the language I quoted from the Kubala and Reyna cases, the motion to compel arbitration should be granted in, quote, the motion to compel should be granted if the argument that the dispute falls within the scope of the agreement is not, quote, wholly groundless. We think we win on the merits, obviously, and we've laid that out at great length here. It's frankly not a close question that this is not wholly groundless or that there aren't plausible arguments on our side, particularly when to prevail the tribunal is going to have to construe the very arbitration agreements that Britannia signed. What about the waiver point? Should we even get to this or should we just say, you know what, you didn't brief the main issue, you're out? I think that's the most straightforward way. I think that's what this court's precedent suggests, Your Honor. I think there's a suggestion that it's an issue of law and there was no prejudice. We never had an opportunity to address the arguments that they made in the reply brief until today, and of course we're happy to do that, and I'm going to do that in the next few minutes. We have conflicting precedent on that. I guess the greater weight of our cases say that if you didn't brief it in your opening brief, it's waived, but we have cases, and I know I've read some in 2017, that say, well, it was adequately briefed in the appellee's brief and so it can be raised in the reply. I'm not sure those panel decisions are reconcilable, but there are cases that support our taking cognizance of it. Maybe we have some kind of discretion to do that. It's not a jurisdictional issue. Because it's not a jurisdictional issue, I won't resist the notion that this court has discretion to decide the issue, and we're very confident that if the court does move on to decide that issue, that both the delegation clause itself and the incorporation of the UNSA trial rules clearly and unmistakably give these questions to the arbitrator. And turning to the incorporation of the UNSA trial rules, as Judge Higginbotham pointed out, there are now three circuits on record in cases that are directly on point. They're cited at page 20 of our brief, the Oracle case from the Ninth Circuit, the Schneider case from the Second Circuit, and the Chevron v. Ecuador case from the D.C. Circuit. Particularly those first two deal with this very scenario where the question was one of scope, whether certain claims were within the scope of the arbitration agreement. And the courts in those cases held that the incorporation of the UNSA trial rules gave the arbitrator questions of scope as well. So not only has no court accepted the argument that Britannia U.S. is making to parse through the scope language, but several courts have ruled directly in our favor on that point. In fact, I think the court would be creating a circuit split to go against those circuits on that point. Mr. Humphrey referenced the Republic of Iraq case, an unpublished Second Circuit case. Of course, we cited a published Second Circuit case that was directly on point that held that questions of scope are delegated to the arbitrator by UNSA trial rules. The Republic of Iraq case was really a very unique scenario. In that case, no signatory sought arbitration. And you had a true stranger to the contract, the Republic of Iraq, coming in and trying to claim third-party beneficiary status. And the court held in that context, that very limited context, the arbitrator did not have the authority to address Iraq's question of arbitrability. Is anyone today questioning the snap removal argument? We don't think there's any way this court reaches it. Is anyone arguing one way or another on that? We argue that it is, that the removal here was valid. I understand, but I don't hear anybody talking about it. I don't know that I want to venture off and deal with all those problems if no one is challenging the rule here. Well, all I can base my answer on is the briefing, and at the very end of both parties' briefs, I think both parties recognize that if the court gets all the way past the waiver, the delegation clause, and somehow reaches in the first instance arbitrability and reaches the predicate choice of law question. We think the court's got jurisdiction if they rule for me. If they rule for us, there's no doubt there's federal jurisdiction. As Judge Haynes questioned my opposing counsel, even under their theory of citizenship, under the FAA and the convention, there's jurisdiction here. And the snap removal wouldn't apply to convention removal. That's right. The snap removal issue. That's correct. Those are separate issues. If we find there's convention jurisdiction, we're kind of done. As interesting, really, as the snap removal question is, and as much as I think my two colleagues would be amazing at addressing it, you're saying we don't need to. I'm saying you don't need to. Certainly the court can give alternate grounds for all this. We don't need to make a snap decision. That's right. There you go. That's right. And I guess just turning briefly back to the delegation clause cases, there are no cases that have been cited by Mr. Humphrey that claim that the EUNSA trial rules do not delegate questions of scope. And as the questioning pointed out, there is the Petrofract case from this circuit, which involved the AAA rules, which are worded slightly differently, but that case does hold that the incorporation of the AAA rules delegates exclusive authority to the arbitrator to determine arbitrability. Is there anything that was in his reply brief that you haven't addressed that you want to address, at least as far as the arguably waived issues? No. I think I have now covered that. The only case even arguably cited on their side on the delegation clause is the Republic of Iraq case, unpublished, distinguishes two published cases from the Second Circuit on the ground that no signatory in that case sought arbitration. I would expand a little bit on the question of Mr. Moshiri and Mr. Atiyah for a moment, and that's simply to point out that they are undisputably employee agents of the signatories here, and it is a longstanding principle of FAA law that a plaintiff cannot evade an arbitration agreement by suing employee agents of the signatories. And that principle, the best case we cite on it is N. Ray Merrill Lynch, and that runs through a lot of the federal citations as well. It would be hard to find a more well-established principle of law, and if this court does somehow reach the English law question, English law likewise recognizes that common sense principle. The 1996 Arbitration Act states that a party includes a person who is claiming under or through a signatory, and that is very much what Mr. Moshiri and Mr. Atiyah are doing here. They have been sued for actions that they allegedly took in the scope and course of their employment and their agency. They have been intimately involved in the proceedings here. These are not some strangers to the case like Iraq and the Republic of Iraq case, and therefore they are treated as parties for purposes of federal law and English law. And if there are no further questions, I will give back the balance of my time. All right. Thank you, Mr. Street. Mr. Humphrey, you've saved time for rebuttal. Thank you, Your Honor. So the first thing I'd like to address just very briefly were the cases of Kubala and Reyna and the Regents Bank cases, simply to point out that I've quoted the language from the arbitration provisions for the delegation clauses in Kubala and Reyna in my brief, and in fact the Regents case as well on this footnote. Each one of them delegate the sole or exclusive right to determine a Kubala interpretation applicability. In Reyna, applicability, scope, construction, interpretation. In the Regents case, scope. All of them explicitly delegate scope or interpretation, which is how those cases are distinguished from this case. Another thing I would like to address is the discussion of the bid procedures documents as something necessary for the court to construe in this case. The arbitration agreement cannot be incorporated in the bid procedures documents because they're not contracts. They're explicitly not contracts. They say nothing in this document can be construed as to create any contract. I don't know how more clear that can be. But wasn't the confidentiality agreement signed as part of the bid process? It was signed early on in the bid process. All right. So how can you say it's completely—it's not like my hypo at the bank where I just happen to be at the bank for some of the reason fall, having nothing to do with a checking account I closed years before. This is integrally tied up in the whole thing. You sign the confidentiality in order to begin the bid process. You do the bid process. Then you say the bid process is unfair. Why isn't that at least related enough that we send it to the arbitrator to decide how related is it? Well, with regard to the relation, I've never—I'm not sure of any cases that show that a causal relationship between the contract and the claims would make them related enough. Usually it has to be some nexus between the operative facts of the two, of any contract claim or the contract itself, and the torts. Here we don't have to look at the confidentiality agreement at all. There's no defense that's created by it, and there's no part of our claim requires reference to its terms or construction of the document. You don't think the fact that that was intertwined with the bid process that you now challenge matters? I don't think it's intertwined with the bid process, right? It's an agreement that— Well, let me put it to you this way. We know, the studies have informed us, that the number one driver behind arbitration is privacy. So you have a confidentiality agreement, and the natural follow-on to that is they want to preserve that to the extent they can if a dispute arises from that by what? By private adjudication. So, I mean, it seemed to be intimately related. It could be related, but it's just hard to see why someone signing a confidentiality agreement that only governs the use of certain information, not the entire process, it doesn't purport to govern the entire bid process at all. Someone signing that would be agreeing to arbitrate any claim that had to have any relationship with the bid process. For the simple reason that if you go into the United States District Court or State Court of General Jurisdiction, then the discovery processes are going to create problems with regard to confidentiality. In other words, one of the ways that you preserve confidentiality is to arbitrate. That's why a lot of business claim they want arbitration. They want to resolve a dispute privately. It's true, Your Honor. I mean, the courts also provide those avenues as well. I mean, I've certainly just had a hearing last week in the district court where we talked about a protective order, and it's done every time. Could you have bid without signing onto this agreement? I don't know. That would have been up to Chevron whether they wanted us to or not. And you're not just making an argument that has something to do with the bid process. Aren't you challenging the bid process? Is that what your case is about? No, our case, Your Honor, is challenging representations they made during the bid process later on. Right. You're saying they lied to you during the bid process. That's challenging the bid process. It's not tangential to the bid process. If there wasn't a bid process, you wouldn't have a case, right? That's correct. And if you had gotten the bid, if you had been awarded the bid, you also wouldn't have a case. Of course. Okay. So the bid process is what the case is about. I mean, you're fighting that, but I don't see how it could be anything else. The phrase bid process will be used in your case. Sure, the bid process will, Your Honor. And that's the whole case. That is, Your Honor. Okay. What we're saying is that the confidentiality agreement does not encompass the entire bid process, just one small aspect of it. But Judge Higginbottom brought up snap removal, which I didn't get to previously, but basically I think the court just needs to look at the effect of this interpretation of the statute. Essentially, a well-heeled defendant gets to sit, electronically watch the docket, see when they get sued, and then apparently Congress intended that those people be allowed to remove cases in circumvention of the forum defendant rule, whereas regular Joe who doesn't have that resource gets a way to get served. It's hard to see how Congress could have intended that when they enacted the forum defendant rule. Other than the language they used. Your case and all of today's cases are under submission, and the court is in recess.